OPINION
{¶ 1} This appeal is from an order entered by the Mahoning County Court of Common Pleas, Probate Division, on May 3, 2000, which resulted in a finding of contempt of court by Richard D. Goldberg from failing to comply with previous orders of the court. In that finding, Goldberg was found guilty of direct contempts of court and guilty beyond a reasonable doubt of criminal contempts of the court. The court ordered that Goldberg be sentenced to a term of imprisonment of 180 consecutive days to be served consecutively with any other order of either the court below or any other federal or state court, which has imposed a sentence upon him or may subsequently impose a sentence. The sentence was ordered to commence after completion of all other periods of actual physical incarceration. Goldberg is currently incarcerated in the Federal Correctional Institute at Morgantown, West Virginia,
 {¶ 2} This case was consolidated for hearing before this court with three other cases involving similar issues of contempt. Since the facts in each case are somewhat different, the cases are considered separately in our opinions. However, the essential facts in this case are virtually the same as in the case of Ellen Rose Mercurio, case No. 00 CA 108. The only relevant difference between the Williams case and the Mercurio case are the names of the parties and the orders of distribution. In each case, the court had approved a settlement and ordered distribution to be accounted for by Goldberg. In both the Mercurio and Williams case, Goldberg failed to make an accounting at the time that he was ordered to do so and, in each of these cases, he also failed to make distributions as ordered by the court. The principles of law enunciated in the Mercurio case apply to this case. The same assignments of error are raised and the same rationale applies to each. We have attached a copy of Mercurio opinion to our decision herein, which opinion, as to the overruling of the assignments of error and the reasons therefore are adopted fully herein.
 {¶ 3} In this case, on March 12, 1999, an amended application to approve settlement and distribution was filed by Attorney Richard Goldberg ("Goldberg") to approve a settlement in the wrongful death action of the estate of Towanna Williams. On the same day, the court approved the settlement and distribution of wrongful death proceeds as requested by Goldberg. On April 12, 1999, the report of distribution was due pursuant to the terms of that entry. On May 13, 1999, the court issued a notice of delinquent account to Goldberg and the parties. The notice provided for a hearing on June 8, 1999.
 {¶ 4} On June 8, 1999, a hearing was conducted on the notice of delinquent account. On June 17, 1999, the probate court issued its consolidated judgment entry and orders to appear and show cause. In the hearing, the probate court documented the assurances and admissions of Goldberg and his counsel that the amounts would be paid immediately. The court renewed its orders to pay immediately.
 {¶ 5} At the March 12, 1999 distribution order, the court approved a settlement of $1.65 million. The settlement proceeds were to be distributed as follows: attorney fees to Goldberg, $660,000; reimbursement to Goldberg for litigation expenses, $15,145.83; Joshua Williams wrongful death trust, $150,000; New York Life Insurance Company for the purchase of a guaranteed annuity contract for the sole benefit of Joshua Williams, a minor, $500,000; Willis Williams, $274,854.20. As previously noted, these amounts were to be distributed to those persons and accounted to before the probate court on April 12, 1999.
 {¶ 6} At the June 8 hearing, the court found that Willis Williams had not yet received $274,864.20, the estate had not yet received $50,000 and there had not been a death trust set up for Joshua Williams and the $150,000 to be distributed to that trust account had not been paid. At the June 8th hearing, Goldberg was represented by counsel who stated in chambers that they were not there to challenge the proceedings or whether Goldberg had wrongfully taken money of the estate, but that Goldberg had the money in an account and that they would pay whatever sums were ordered. Goldberg was not present but Attorney Dunlap entered an appearance on his behalf and invoked his Fifth Amendment privilege against self-incrimination. There was no challenge to these proceedings.
 {¶ 7} Neither Goldberg nor his counsel complied with the order to pay the amounts immediately. There were no objections to the proceedings at the June 8, 1999 hearing.
 {¶ 8} The follow-up proceedings in this case were exactly as those in the Mercurio case and which are fully outlined in that case.
 {¶ 9} As previously noted, Goldberg's assignments of error are exactly the same as in the Mercurio case. They are as follows:
 {¶ 10} "1. The Probate Court erred in finding Goldberg to be in contempt of court.
 {¶ 11} "2. The Probate Court erred in ordering Goldberg to be imprisoned for failure to pay a debt.
 {¶ 12} "3. The Probate Court erred by taking judicial notice of statements made in other cases.
 {¶ 13} "4. The Probate Court erred by failing to allow Goldberg basic procedural due process during the contempt hearing."
 {¶ 14} All of the assignments of error are overruled for the same reasons set forth in the attached Mercurio opinion. The evidence is clear beyond any doubt whatsoever that Goldberg intentionally failed to account to the court for the full distribution of payment as required by the March 12, 1999 order to be completed by April 12, 1999. No extension was sought by him. It was only when the court initiated a proceeding to show cause that any accounting was made and once again, it is crystal clear that all payments were not made. There is little, if any, doubt that Goldberg intended to steal that additional money. In fact, that was not challenged by counsel either at the show cause hearing of June 8, 1999, or at the contempt hearing. Thus, in summary, the probate court had ample evidence to find Goldberg guilty of criminal contempt, both for the failure to account and for the failure to distribute the remaining proceeds of the wrongful death settlement as ordered by the court.
 {¶ 15} Assignments of error one, two, three and four are overruled, based upon the law and reasoning set forth in the Mercurio opinion, which is attached and marked Exhibit A.
 {¶ 16} The judgment of the Mahoning County Court of Common Pleas, Probate Division, for contempt in the matter of the estate of Towanna Williams is affirmed.
Judgment affirmed.
MILLIGAN and NAHRA, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
MILLIGAN, J., retired of the Fifth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
NAHRA, J., retired of the Eighth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A
IN RE MERCURIO, Unpublished Decision (3-24-2003) In the Matter of The Estate of Ellen Rose Mercurio, Deceased, Appellee. No. 00 CA 108. In The Court Of Appeals Seventh Appellate District Mahoning County, Ohio. Rendered on March 24, 2003.
APPEAL from the Mahoning County Court of Common Pleas, Probate Division
Paul J. Gains, Prosecuting Attorney, and Linette M. Stratford, for appellee.
Charles L. Richards, for appellant, Richard D. Goldberg.
 OPINION
McCORMAC, J.
 {¶ 17} This appeal is from an order entered by the Mahoning County Court of Common Pleas, Probate Division, on May 3, 2000, which resulted in a finding that attorney Richard D. Goldberg was in criminal contempt for failure to comply with the court's judgment entry and orders of June 17, 1999, that he pay over the entire proceeds of the wrongful death settlement in the gross sum of $150,000 to the estate of Ellen Rose Mercurio. The court ordered that Goldberg be sentenced to a term of 180 consecutive days of imprisonment within the Mahoning County Justice Center and that such sentence be served consecutive to any other sentence imposed upon him. The sentence was ordered to commence after completion of all other periods of actual physical incarceration. Goldberg is currently incarcerated in the Federal Correction Institute at Morgantown, West Virginia.
 {¶ 18} This case was consolidated for hearing before this court with other cases involving similar issues of contempt. However, since the facts in each case are somewhat different, although the law is generally the same, the cases will be considered separately in our opinions.
 {¶ 19} Appellant, Goldberg, asserts the following assignments of error:
 {¶ 20} "1. The Probate Court erred in finding Goldberg to be in contempt of court.
 {¶ 21} "2. The Probate Court erred in ordering Goldberg to be imprisoned for failure to pay a debt.
 {¶ 22} "3. The Probate Court erred by taking judicial notice of statements made in other cases.
 {¶ 23} "4. The Probate Court erred by failing to allow Goldberg basic procedural due process during the contempt hearing."
 {¶ 24} Goldberg represented the estate of Ellen Rose Mercurio, deceased, in a wrongful death action filed in the Mahoning County Court of Common Pleas. Ms. Mercurio's estate was admitted to probate in Mahoning County, Ohio, and Paulette Sitnic was appointed executrix.
 {¶ 25} Goldberg settled the wrongful death case in February 1999, for $150,000, and the executrix of the estate, Paulette Sitnic, executed the settlement check. However, neither Goldberg nor the executrix had sought prior approval of the settlement from the probate court as required by law.
 {¶ 26} On February 29, 1999, an application to approve the settlement was filed by attorney Albert Ortenzio, as the attorney for the estate. In the meantime, Goldberg had possession of the $150,000 check from the insurance company which was made out to the executrix of the estate and Goldberg.
 {¶ 27} The application for the hearing to approve the settlement was set for hearing on July 8, 1999, at which time Goldberg did not attend. However, attorneys Dunlap and Ingram did appear on his behalf. At that hearing, the probate court took testimony from Executrix Sitnic. Sitnic testified that she felt that the amount of settlement was fair. She further stated that she had received a call on the morning of the hearing from Casey, the receptionist/secretary employed by Goldberg, that she had met at least a half a dozen times and whose voice she knew. Casey told her that the hearing had been canceled and, when Sitnic asked Casey why, she said that "Rick canceled it," and "I said why." Casey replied, because of things he (Goldberg) has going on in other areas. Sitnic told Casey to let Rick (Goldberg) know that she has a copy of the settlement check and that she will have an attorney present. Casey merely advised her that she would be notified when the hearing was rescheduled.
 {¶ 28} At the conclusion of the June 8, 1999 hearing, the probate court found the settlement to be fair but that Goldberg should immediately deposit the $150,000, which he held in an account belonging to him, to a restricted account under the name of the decedent's estate. He ordered that that account be wholly restricted and not to be disposed at all until the court could determine the apportionment between the decedent's estate and other beneficiaries as surviving claimants for the wrongful death. He stated that he would not award any attorney fees at that time or authorize, approve or even consider proposed litigation expenses. This hearing took place after issues of embezzlement from various wrongful actions had come to light and were being pursued in Federal court. Understandably, the probate judge sought to protect these assets to the extent possible for the Mercurio family. Dunlap, the attorney representing Goldberg, stated that the transfer of the $150,000 would be done immediately as ordered by the court.
 {¶ 29} On June 19, 1999, Goldberg filed a notice of appeal of the June 17, 1999 judgment entry, which appeal was voluntarily dismissed by Goldberg on October 25, 1999.
 {¶ 30} On December 15, 1999, the probate court filed a certified copy of an August 27, 1999 criminal federal plea agreement in UnitedStates v. Richard D. Goldberg, United States District Court, Northern District of Ohio, Case No. 4:99CR182.
 {¶ 31} On September 16, 1999, the executrix of the Mercurio estate filed a complaint for concealment of assets in the probate court alleging that Goldberg had concealed the entire settlement amount of $150,000.
 {¶ 32} On January 3, 2000, the probate court issued orders to appear and show cause in the concealment action, alleging that Goldberg failed to comply with the court's order of June 17, 1999, and that he never paid over the $150,000 to the estate. The court also ordered Goldberg to show cause as to why he should not be held in contempt of court for his failure to pay the funds to the estate.
 {¶ 33} A hearing on both the concealment action and the show cause order for contempt was held on January 10, 2000. Goldberg was not present at the hearing, but was represented by Charles L. Richards, his attorney. At the hearing, the proceedings in concealment were bifurcated from the contempt hearing, although the contempt hearing was conducted immediately after the concealment action. Initially, there was an objection as to the absence of Goldberg, it not being certain whether he was actually incarcerated at the time or not. However, any objection to Goldberg's prior unavailability was waived by Goldberg's attorney when subsequently Goldberg was returned to Mahoning Probate Court on February 2, 2000, and given an opportunity to proceed. No evidence was offered at that time.
 {¶ 34} At the contempt hearing on January 10, 2000, the evidence was unequivocal and conceded by Goldberg's attorney that Goldberg had not complied with the court's order of June 17, 1999, to immediately deposit the $150,000 in his account to the account of the estate. As previously noted, Goldberg's attorney, Dunlap, said that that would be done immediately. It had never been done. In this contempt action, Richards referred to the plea agreement in the United States Federal District Court criminal case that required Goldberg to deposit $4.5 million in an account managed by Federal District Court Judge Polster. He also stated that National City Bank had a judgment against Goldberg, which he estimated without direct knowledge to be $4.6 million and that the Mahoning County Probate Court held "$2,000,000 of monies from Goldberg's trust account in a National City Bank account." His objection was that Goldberg had no ability to pay the $150,000 and that Dunlap was incorrect in stating that, on July 17, 1999, Goldberg could obtain an immediate transfer of the $150,000 payable to the estate to be held under strict supervision of the Mahoning County Probate Court. There was no proof by way of evidence of Goldberg's inability to transfer the funds at the time the transfer was ordered on July 17, 1999, or that he lacked assets to pay the funds thereafter, as ordered by the court. Additionally, Richards argued by way of defense that it is unconstitutional to hold one in contempt for failure to pay a civil debt which the debtor is financially unable to make.
 {¶ 35} Richards stated that he had nothing further to offer.
 {¶ 36} The evidence adduced was that the transfer of funds had never been made to the estate and that Dunlap, on behalf of Goldberg, promised "I will get it done in the next few days."
 {¶ 37} The court found that Goldberg was also guilty of direct contempt of court in attempting to suborn the court's separately ordered appearance of the executrix in this case, Paulette Sitnic, at the June 8, 1999 hearing before the court and that his attempt to do so constituted local fraud upon the court and an interference with and obstruction of the administration of justice by the court. The court found that Goldberg was in direct contempt of court for unlawfully taking and retaining the proceeds of the wrongful death settlement in the gross sum of $150,000 contrary to R.C. 2125.02(C) and 2125.03, Sup.R. 70 and Loc.R. 39, and that the unlawful taking in retaining of the property in assets of the estate constituted a fraud upon the court and an interference with and obstruction of the administration of justice by the court. The court further found that Goldberg was guilty of criminal contempt of court beyond a reasonable doubt in failing to comply with the court's judgment entry and orders of June 17, 1999, that he pay over the entire proceeds of the wrongful death settlement in the gross sum of $150,000 to the instant estate and that this failure also constituted both fraud upon the court and an intended hindrance delay, and obstruction of the administration of justice by the court.
 {¶ 38} Appellant's first assignment of error is that "the Probate Court erred in finding Goldberg to be in contempt of court."
 {¶ 39} In respect to this assignment of error, appellant asserts the following arguments: (1) the probate court did not prove Goldberg guilty of criminal contempt beyond a reasonable doubt; (2) Goldberg's conduct did not constitute direct contempt of court; (3) Goldberg cannot be held in contempt for failing to pay over that which he is entitled to have; and (4) the probate court did not have subject matter jurisdiction in the concealment action.
 {¶ 40} The probate court had sufficient evidence before it to find Goldberg in criminal contempt of the court for the three reasons noted by the probate court, all of which were proved beyond a reasonable doubt. Goldberg had notice of and was represented by counsel at the June 8, 1999 hearing, where it was proved beyond a reasonable doubt that Goldberg had obtained a settlement and the executrix of the estate's signature on the settlement check without obtaining approval of the probate court. Goldberg had deposited the proceeds of the check in his own account, and his counsel stated that the money was still in that account at the time of the June 8, 1999 hearing. Goldberg's counsel stated that the money would be transferred from that account to the account ordered by the court in an account of the estate under the strict management and control of the probate court with no funds whatsoever to be transferred from that account until the court ordered approval after determining to whom the money was to be paid. There was direct proof in the contempt hearing that the order of the court was disobeyed in that no money had been transferred from Goldberg's account. There was no evidence offered by Goldberg, despite an opportunity to do so, that Goldberg was unable to make that transfer at the appropriate time. There was only rhetoric by his counsel to that effect.
 {¶ 41} There was sufficient evidence to prove beyond a reasonable doubt that Goldberg had the intent to convert money to his own use; in other words, to embezzle it. Goldberg admitted in the plea agreement to which counsel Richards referred to and which was a part of the probate court record that he had stolen $150,000 from the Mercurio estate.
 {¶ 42} On the morning of the concealment and contempt hearing, Sitnic, the executrix of the Mercurio estate, testified under oath that an employee named Casey, a receptionist/secretary in Goldberg's office, had called her and said that it would not be necessary to attend the hearing because it was cancelled and that Goldberg would notify her of a rescheduling of the hearing. There was no contrary evidence, although appellant was given an opportunity to present any evidence that they chose. The evidence in this case is much stronger than that in theHunter case, in that Goldberg's employee was specifically identified and Goldberg's employee told Sitnic that Goldberg would notify of the rescheduling of the hearing implying sufficient evidence to constitute proof beyond a reasonable doubt that Goldberg had told Casey to make the call in question. Under Evid.R. 801(D), Article VIII, Hearsay, it provides that:
 {¶ 43} "Statements which are not hearsay. A statement is not hearsay if:
 {¶ 44} "* * *
 {¶ 45} "(2) Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship * * *."
 {¶ 46} A secretary making calls to a client concerning a hearing involving the client's case is a matter within the scope of the agency or employment. Casey made the statement to Sitnic during the course of this employment. Lying to a client in an effort to prevent their appearance at a hearing is contempt and a fraud upon the court even though, in this case, the attempt did not succeed.
 {¶ 47} The trial court has the discretion to determine the kind and character of conduct which constitutes direct contempt of court.State ex rel. Seventh Urban, Inc. v. McFaul (1983), 5 Ohio St.3d 120,122, quoting State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus. An appellate court will not reverse a finding of contempt unless the trial court abused its discretion. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion involves more than an error of judgment. It constitutes an attitude on the part of the court that is unreasonable, unconscionable or arbitrary. Pembauer v.Leis (1982), 1 Ohio St.3d 89.
 {¶ 48} Contempt is a disregard of or disobeyance to an order or command with judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294. It is conduct which engenders disrespect for the administration of justice or which tends to embarrass, impede, or disturb a court in the performance of its functions. Denovchek v. Bd. of Trumbull Cty. Commrs.
(1988), 36 Ohio St.3d 14. Contempt may be classified as either civil or criminal. Criminal contempt sanctions operate as punishment for the completed act of disobeyance that is designed to vindicate the authority of the court. Criminal conduct is usually characterized by an unconditional prison sentence. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253-254. A finding of criminal contempt requires proof beyond a reasonable doubt.
 {¶ 49} In cases of criminal contempt, it must be shown that the contemptor intended to defy the court. Midland Steel Prods. Co. v.U.A.W. Local 486 (1991), 61 Ohio St.3d 121, paragraph two of the syllabus. The state of mind of an accused, including appellant's knowledge of the terms of the court order, may be proven by the circumstantial evidence. Midland Steel, supra, at 128. In this case, there was direct knowledge of the terms of the court orders.
 {¶ 50} Goldberg's conduct in this case supports a finding of disrespect for the administration of justice, which impeded or disturbed the probate court in the performance of its functions. There was ample evidence to prove that Goldberg was guilty of criminal contempt beyond a reasonable doubt.
 {¶ 51} Goldberg also contends that the contempt, if any, is indirect. A direct contempt is one committed in the presence of the court, whereas an indirect contempt is one committed outside the court's presence. See In re Lands (1946), 146 Ohio St. 589. There is little difference between the classification of contempt as direct or indirect other than a matter in which the contempt case is proved. In this case, most of what took place occurred directly before the probate judge who found Goldberg guilty of the contempt; it was conceded and as a matter of record that the actions ordered by the probate judge did not take place. In other words, there is no doubt that Goldberg did not comply with orders made by the probate court and found necessary to enable the court to carry out the functions of the court. The relevant difference is that indirect contempt cannot be punished summarily and it was not punished summarily in this case. Goldberg was noticed to appear and show cause and did so, represented by counsel, and was given every opportunity to explain his alleged violations of the probate court's orders, thus complying with the requirements of R.C. 2705.03 for indirect contempt. See State v. Local Union 5760, United Steel Workers (1961),172 Ohio St. 75, 82. Even though the Probate Court labeled all of the contempt, direct contempt and part of it arguably may have been indirect contempt, there was no prejudice to appellant since the court complied with all of the essential requirements of R.C. 2705.03 for indirect contempt.
 {¶ 52} Goldberg argues that he cannot be held in contempt for failure to disgorge his attorney fees as, regardless of his conduct, he is entitled to fees which he earned. While that general proposition of law may ordinarily be true, it is not a defense to contempt of court for failure to obey the court's order to pay the entire settlement of an amount improperly deposited in Goldberg's account back into the account ordered by the court until the court could determine what disposition should be made from that fund, which includes attorney fees, as well as payment to the estate or next of kin. The order to put the fund in the control of the estate under strict supervision of the probate court, was not a determination that ultimately no attorney fees would be allowed to Goldberg. The entire amount of the settlement was subject to the court's control until the court ordered, upon proper proof and evidence, the disposition of the fund.
 {¶ 53} Finally, Goldberg contends that the probate court did not have subject matter jurisdiction in the concealment action. That argument is not relevant since the only matter under appeal involves a contempt action pertaining to a situation in which the probate court had full jurisdiction. We find no prejudice to Goldberg by the court's combining of the hearings since the same witnesses and attorneys would probably be involved.
 {¶ 54} Appellant's first assignment of error is overruled.
 {¶ 55} In his second assignment of error, appellant contends that the probate court erred in ordering Goldberg to be imprisoned for failure to pay a debt.
 {¶ 56} It is true that the Constitution prohibits imprisonment merely for debt. However, the Constitution does not prohibit imprisonment for contempt of a court order and neither Goldberg nor his counsel have offered any legal authority in support of their contentions to the contrary."
 {¶ 57} In Second National Bank of Sandusky v. Becker (1900),62 Ohio St. 289, the Ohio Supreme Court pointed out that the ability to imprison for contempt is not dictated by the fact that money is ordered paid, but is determined by the character of the order and money in question. In In re Guardianship of Jadwisiak (1992), 64 Ohio St.3d 175, the Ohio Supreme Court applied the teaching of Second National Bank ofSandusky in a manner directly applicable to this case where they held that it was not unconstitutional for the court to hold an attorney in contempt for failing to comply with court orders requiring him to return fees improperly disbursed, finding that the order in question was not for the payment of money but, rather, to return funds improperly disbursed.
 {¶ 58} The probate court had the jurisdiction and authority to order Goldberg imprisoned for failure to turn over funds necessary for the court to perform its duty in the administration of a matter before it.
 {¶ 59} Appellant's second assignment of error is overruled.
 {¶ 60} In his third assignment of error, appellant asserts that the probate court erred by taking judicial notice of statements made in other cases.
 {¶ 61} The court has the power to take judicial notice of its own records and judicial notice of its own actions in earlier proceedings of the same case. Diversified Mortgage Investors, Inc. v. Athens County Bd.of Revision (1982), 7 Ohio App.3d 157, 159. In the instant action, a probate court took judicial notice of the entire record of the herein matter, all of which was known to appellant and his attorney. Any objection thereto was waived by failure to make a timely request to be heard as to the propriety of taking judicial notice. Evid.R. 201(E).
 {¶ 62} Appellant's third assignment of error is overruled.
 {¶ 63} In his fourth assignment of error, appellant alleges that the probate court erred by failing to allow Goldberg's basic procedural due process during the contempt hearing by failing to allow Goldberg to cross-examine witnesses during the contempt hearing or to conduct a hearing on the contempt charge. There is no substance to this assertion. Appellant received written notice of the charge against him, he appeared and was represented by counsel and was given the opportunity to be heard and present evidence in his favor. A review of the record of the contempt hearing demonstrates that Goldberg's counsel did not seek the opportunity to cross-examine witnesses and, in fact, stipulated to virtually everything upon which the court based its judgment reserving only the contentions that it is unconstitutional to incarcerate a person for failure to pay a civil debt and that Goldberg lacked the ability to make the payments which were ordered. These defenses are invalid as previously discussed.
 {¶ 64} Appellant's fourth assignment of error is overruled.
 {¶ 65} Appellant's assignments of error are overruled, and the judgment of the Mahoning County Court of Common Pleas, Probate Division, for contempt in the matter of the estate of Ellen Rose Mercurio is affirmed.
Judgment affirmed.
MILLIGAN and NAHRA, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
MILLIGAN, J., retired of the Fifth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
NAHRA, J., retired of the Eighth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.