RAYMOND W. BARTOSZEWSKI *et al.*, Plaintiffs-Appellees, v. THE VIL-
LAGE OF FOX LAKE *et al.*, Defendants-Appellants.

Second District    No. 2—94—0251

Opinion filed March 1, 1995.—Rehearing denied April 7, 1995.

Charles A. Cohn, of Cohn & Cohn, of Chicago, for appellants.

Howard R. Teegen, of Soffietti, Johnson, Teegen & Phillips, Ltd., of Fox Lake, for appellees.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiffs, 23 police officers and civilian employees of the Fox Lake police department, brought this four-count declaratory judgment action against the defendant, the Village of Fox Lake (Village), seeking an order declaring that they are entitled to compensation for attendance at roll call. The trial court dismissed count II of the plaintiffs' complaint, which alleged a violation of two of the Village's municipal ordinances. The court also dismissed a portion of count III of the complaint which alleged that the defendant wilfully violated the Federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 *et seq.* (1988)). The plaintiffs appeal those rulings.

The record shows that 14 of the plaintiffs are police officers who are covered by a collective bargaining agreement with the Village. The remaining nine plaintiffs are either nonunion police support personnel or nonunion sworn supervisory police officers both of whom are not covered by the collective bargaining agreement.

The plaintiffs' second amended complaint alleged that for over 10 years the defendant had required the plaintiffs to report for roll call 10 minutes prior to their daily shifts. They alleged that they are entitled to compensation at the overtime rate (time and a half) for all

time spent at roll call. Paragraph 14.15 of the Fox Lake Police Department General Order Manual provided:

"Unless otherwise directed, officers shall report to daily roll call at the time and place specified, properly uniformed and equipped. They shall give careful attention to orders and instructions, avoiding unnecessary talking or movement."

Civilian dispatchers and records personnel were also required by department regulation to attend roll call.

The plaintiffs further alleged in count II of their second amended complaint that they are entitled to compensation based on two Village ordinances, sections 1—8A—10 and 1—8A—11 of the Village Code (Fox Lake, Ill., Village Code §§ 1—8A—10, 1—8A—11 (1990)). Section 1—8A—10 of the Village Code provides in relevant part:

"WORK DAYS AND WORK WEEK:

A. Except as otherwise provided herein for Police Department personnel *** the municipal work week shall be:

* * *

Police Department employees ..... 40 hours per week

B. There shall be provided at least (8) hours of rest in each twenty four (24) hour period. Department supervisors shall establish a normal work day specifically designating the starting time, the quitting time and the lunch period, which time shall be strictly adhered to by the Municipal employees." (Fox Lake, Ill., Village Code § 1—8A—10 (1990).)

Section 1—8A—11 provides in relevant part as follows:

"OVERTIME:

A. Authorization, Compensation: Overtime work is work in addition to the established schedule of hours of work per week and shall be kept to a minimum. Overtime work may be authorized by the department head when necessary and such authorized overtime shall be reported to the Trustee chairman of the department. The employees may be compensated for authorized overtime to an amount equivalent to their regular pay or by being granted compensatory time off at the discretion of the department head, not to exceed one normal work week at any one time.

* * *

C. Hours of Work and Overtime: The work week for all police officers *** shall be a forty (40) hour work week. *** Overtime work may be authorized by the department heads when necessary and such authorized overtime shall be reported to the Trustee chairman of the department. Police officers may be compensated for authorized overtime at a rate of pay equivalent to their regular pay or being granted compensatory time off, at the discretion

of the Chief of Police." Fox Lake, Ill., Village Code § 1—8A—10 (1990).

The trial court dismissed count II with prejudice, finding that: the ordinances cited by the plaintiffs did not support their claim for payment for roll call; the plaintiffs who were members of the union were obligated to file a grievance on this issue under their union contract and therefore the claim was barred; and the Village had a right to consider work segments of 10 minutes per day *de minimis*.

Count III of the plaintiffs' complaint alleged that the Village violated the Federal Fair Labor Standards Act, which requires compensation for all time worked over 40 hours per week and that the plaintiffs are entitled to compensation at either $1^1/_2$ times the regular rate of pay or at the regular rate of pay, depending on whether the particular officer falls under the provisions of section 207(a) or section 207(k) of the Act (29 U.S.C. §§ 207(a), (k) (1988)). In the alternative, the plaintiffs alleged that the Village violated the Act knowingly and willingly and that the underpayment of wages to the plaintiffs was a wilful violation of the Fair Labor Standards Act. The statute of limitations for violations of the Act is two years; however, the limitation period for wilful violations of the Act is three years. (29 U.S.C. § 255(a) (1988).) The trial court dismissed the portion of count III alleging a wilful violation of the Act. In that regard, the court found that the plaintiffs failed properly to plead elements of wilful and wanton conduct.

## CLAIM FOR COMPENSATION UNDER VILLAGE CODE

■ On appeal, the plaintiffs first argue that the trial court erred in finding that the Village Code did not support their claim for compensation for roll call. They contend that the ordinances clearly provide for compensation for overtime and that overtime served at roll call may not be singled out as an exception. In support of their claim, the plaintiffs rely on *Aiardo v. Village of Libertyville* (1989), 184 Ill. App. 3d 653.

In response, the Village notes that the ordinance defines overtime work as "work in addition to the established schedule of hours of work per week." It contends that since the 10-minute roll call segments were part of the plaintiffs' "established schedule" the segments did not fall within the definition of overtime in the ordinance and therefore it was not required to compensate the plaintiffs for the time. The Village claims that *Aiardo* is distinguishable because the language of the ordinance involved in that case was different from the ordinance involved here.

In *Aiardo*, Libertyville police officers sought a declaration that they were entitled to compensation for 15 minutes they spent each working day at roll call. There, the ordinance defined the work week as 40 hours per week. It further provided that police officers should be compensated at $1^1/_2$ half times their regular hourly rate for all police work in excess of the established hours per work period.

We find the Village's attempt to distinguish *Aiardo* unpersuasive. The ordinance in the case at bar clearly provides for a work week of 40 hours, not 40 hours and 50 minutes. It also clearly provides for compensation of authorized overtime at the regular pay rate or by being granted compensatory time off. Under the Village's interpretation of the ordinances in question, it could extend the working day by two hours instead of 10 minutes and claim that since it was part of the plaintiffs' "established schedule" it does not owe compensation. Such an interpretation is illogical. Moreover, we note that the language in *Aiardo* providing compensation for work "in excess of the established hours per work period" (*Aiardo*, 184 Ill. App. 3d at 656) was very similar to the language in the instant case defining overtime as "work in addition to the established schedule of hours of work per week."

■ The Village argues that the plaintiffs acquiesced in the Village's policy of not paying for roll call by failing to object for 10 years before filing this lawsuit. We note, however, that the failure to object for a lengthy period, without more, does not mean that a plaintiff acquiesced in working overtime without compensation. (See *Ebright v. City of Whitehall* (1982), 8 Ohio App. 3d 29, 33, 455 N.E.2d 1307, 1311 (where court found that police officers did not acquiesce in working overtime roll call for 15 years when there was no showing that any acquiescence was intentional).) A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 286.) Here, nothing from the face of the plaintiffs' complaint indicates any acquiescence was intentional. Accordingly, we reject the Village's acquiescence argument.

## THE *DE MINIMIS* RULE

The plaintiffs next argue that the trial court erred in ruling that their claim was *de minimis* because the daily roll call segments were only 10 minutes. The plaintiffs further contend that the trial court erred in applying a Federal *de minimis* rule to count II of their complaint which was based solely on a State law claim.

While we recognize that count II of the plaintiffs' complaint is a State law claim, we nonetheless find the Federal case law in this

area instructive. The only Illinois case cited by the parties, *Crowley v. Department of Employment Security Board of Review* (1989), 190 Ill. App. 3d 900, did not squarely address the *de minimis* issue in the context of the present case. There, the issue was whether the failure to remain at a three-minute mandatory meeting held during an employee's off-hours for which he is not being compensated constituted misconduct making the employee ineligible for unemployment benefits. The court found the employer's practice of requiring attendance at such meetings violated section 785.27, a regulation promulgated pursuant to the Fair Labor Standards Act (29 C.F.R. § 785.27 (1987)), and therefore, the employee was not guilty of misconduct for refusing to attend. The court also noted that the length of time is not determinative of whether compensation is due, citing *Aiardo* (184 Ill. App. 3d 653).

*Anderson v. Mt. Clemens Pottery Co.* (1946), 328 U.S. 680, 90 L. Ed. 1515, 66 S. Ct. 1187, established the Federal *de minimis* rule. There, employees of a pottery plant brought a claim under the Fair Labor Standards Act to recover overtime pay for time spent walking from the time clock to their work areas. The Supreme Court found that the time was compensable but noted:

> "We do not, of course, preclude the application of a *de minimis* rule where the minimum walking time is such as to be negligible. The workweek contemplated by § 7(a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. The *de minimis* rule can doubtless be applied to much of the walking time involved in this case, but the precise scope of that application can be determined only after the trier of facts makes more definite findings as to the amount of walking time in issue." *Anderson*, 328 U.S. at 692, 90 L. Ed. at 1525-26, 66 S. Ct. at 1195.

In an apparent attempt to capture in regulatory form the import of the *de minimis* rule as announced in *Anderson* and subsequent cases, the Department of Labor issued the following regulation:

> "In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. (*Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680 (1946)[.]) This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. See *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F.2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $1 of additional compensation a week is 'not a trivial matter to a workingman,' and was not de minimis; *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that 'To disregard workweeks for which less than a dollar is due will produce capricious and unfair results.' *Hawkins v. E.I. du Pont de Nemours & Co.*, 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), holding that 10 minutes a day is not de minimis." 29 C.F.R. § 785.47 (1993).

■ In *Lindlow v. United States* (9th Cir. 1984), 738 F.2d 1057, the United States Court of Appeals for the Ninth Circuit noted that although many courts had found daily periods of approximately 10 minutes *de minimis*, there should be no precise amount of time that should be denied compensation as *de minimis*. The court then set forth a three-part test to determine whether an otherwise compensable claim is *de minimis*. That test calls for consideration of: (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work. In recognizing the need to consider the third prong, *i.e.*, whether the work was performed on a regular basis, the *Lindlow* court cited with approval section 785.47 of the Code of Federal Regulations.

The trial court relied on *Riggs v. United States* (1990), 21 Cl. Ct. 664, in finding that the Village had the right to consider work segments of 10 minutes or less *de minimis*. In *Riggs*, fire fighters at a Federal air force base filed an action under the Fair Labor Standards Act to recover for overtime pay for the small amount of time they spent getting protective clothing and appearing at roll call prior to the start of their shifts, a total of nine minutes. The case involved a conflict between section 785.47 of the Code of Federal Regulations, which is the above-mentioned regulation promulgated by the Department of Labor under the Fair Labor Standards Act, and a regulation of the Office of Personnel Management (OPM) which adopts regulations under the same Act for Federal employees. The OPM regula-

tion set a 10-minute threshold under which an employee could not recover for preshift or post-shift overtime. The *Riggs* court undertook an extensive discussion of the *de minimis* rule, but in the end it deferred to OPM's statutory interpretation and noted that other decisions of the Claims Court had applied a "rule of thumb" that preliminary work would be treated as noncompensable if it totalled less than 10 minutes per day.

■ We find that the Village's reliance on *Riggs* is misplaced. *Riggs* dealt with an OPM regulation that specifically prohibited preliminary overtime of less than 10 minutes. Here, no similar regulation is involved. More importantly, the analysis in *Riggs* was faulty to the extent that it applied a bright-line rule finding work time under 10 minutes *de minimis*. We find that the better approach was taken by the *Lindlow* court in applying a three-prong test to determine whether time is *de minimis*.

Applying the *Lindlow* factors to the facts set forth in the plaintiffs' complaint, we find that they weighed heavily in favor of the plaintiffs. First, we find no practical administrative difficulties in recording the time. It was not so minuscule that it could not be recorded for payroll purposes. Second, when viewing the plaintiffs' claim in the aggregate, it amounted to quite a substantial claim, *i.e.*, possibly 50 hours per year, times 23 plaintiffs' claims, times 10 years. Last, the plaintiffs' complaint indicates that the work was performed on a regular basis for a fixed amount of time. Nothing in the record indicates that it was sporadic. Under the circumstances, we find that the trial court erred in applying the *de minimis* rule to dismiss the plaintiffs' complaint.

### GRIEVANCE PROCEDURE UNDER UNION CONTRACT

Next, the plaintiffs argue that the trial court erred in finding that the plaintiffs who were union members were precluded from filing this lawsuit because of their failure to file a grievance under the union contract with the Village.

Section 8.1 defines a grievance as:

> "a dispute or difference of opinion raised by an employee *** against the Village involving an alleged violation or misapplication of an express provision of this Agreement."

Section 8.5 provides in relevant part:

> "If a grievance is not presented by the employee *** within the time limits set forth above, [5 days] it shall be considered waived and may not be further pursued by the employee."

The Village argues that this dispute involves a matter covered by an express provision of the union contract, and since a grievance was

not filed, the claim should be considered waived. Specifically, the Village contends that section 7.3 of the union contract covers the issue of preshift overtime. In response, the plaintiffs first argue that the Village waived any reliance on section 7.3 by failing to rely on it in the trial court. We note, however, that section 7.3 of the union contract is a part of the record on appeal. In fact, the plaintiffs themselves relied on it as the basis for bringing count I of their original complaint. That count was later dismissed. We find that we can consider section 7.3 because we can affirm a trial court's decision on an issue on any basis appearing in the record. *McDermott v. Metropolitan Sanitary District* (1992), 240 Ill. App. 3d 1, 28; *Firestone v. Fritz* (1983), 119 Ill. App. 3d 685, 689.

Turning to section 7.3, we note that it provides:

> "When any police officer is held over for more than fifteen (15) minutes beyond his regularly scheduled eight (8) hour workday or duty shift as a result of events or activities which occur during his shift, or if directed to work before his regularly scheduled work day or duty shift, he shall be paid at a rate of one and one-half $(1^{1}/_{2})$ times his regularly hourly rate of pay subject to Section 7.4 for all hours in excess of his regularly scheduled workday, with such pay received in fifteen (15) minute segments. In addition, overtime at time and one-half $(1^{1}/_{2})$ shall be paid for all hours worked beyond one hundred and seventy one (171) hours in a twenty-eight (28) day work cycle."

The union plaintiffs argue that they were not required to file a grievance because count II of their complaint is based on a Village ordinance requiring overtime, not section 7.3. They contend that since the Village ordinances and section 7.3 do not conflict, count II of their complaint should not have been dismissed. We disagree.

Evidence that a party to a labor agreement intended to waive a statutory right must be clear and unmistakable. (*Village of Oak Park v. Illinois State Labor Relations Board* (1988), 168 Ill. App. 3d 7, 20.) A valid waiver requires the intentional relinquishment of a known right. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 499.

■ Applying the above-mentioned principles, we find that section 7.3 of the union contract plainly covers the matter of preshift overtime work. The plaintiffs recognized this when they filed count I of their original complaint. We find that this was clearly a dispute involving a violation or misapplication of an express provision of the agreement. That the plaintiffs would have had another legal theory on which to proceed did not remove the dispute from the ambit of section 7.3. The union plaintiffs specifically agreed in section 8.1 of

the contract that the grievance procedure, with its ultimate binding arbitration, applied to matters involving such violations or misapplications of express provisions of the contract. This fact, coupled with the explicit language of 7.3 covering preshift overtime compensation, clearly evinces an intent to waive any reliance on the Village's ordinance covering the same subject matter. Accordingly, we find that the trial court correctly found that the claims of the union plaintiffs were waived by their failure to file a grievance.

## COUNT III—ALLEGATION OF WILFUL VIOLATION

The plaintiffs next argue that the trial court erred in dismissing the portion of count III of the complaint that alleged a wilful violation of the Fair Labor Standards Act.

Initially, we note that the Fair Labor Standards Act applies to labor conditions in industries engaged in commerce or the production of goods for commerce. (29 U.S.C. § 202 (1988); *Zientara v. Long Creek Township* (1991), 211 Ill. App. 3d 226, 243.) Neither party has raised an issue about whether the Village is even subject to the Act. Since the issue has not been briefed, we will assume that the Act applies. See *Zientara*, 211 Ill. App. 3d at 243.

In its motion to dismiss the allegation of a wilful violation, the Village claimed that the plaintiffs had pleaded mere conclusions. It claimed that the plaintiffs were required to plead supporting facts in support of the allegation that the Village's conduct was wilful, citing *Burr v. State Bank* (1951), 344 Ill. App. 332.

In the instant case, paragraph 9 of count III of the plaintiffs' complaint alleged:

> "Additionally, and/or alternatively, the plaintiffs state that the above described failure to pay for time spent at roll call was done knowingly, wilfully and/or with knowledge that said practice violated the statutes cited in paragraph 9 above. As such, said underpayment of wages to the plaintiffs was a willful violation of the Fair Labor Standards Act."

The Supreme Court has stated that a "wilful violation" of the Act is shown when the employer either knew of or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. (*McLaughlin v. Richland Shoe Co.* (1988), 486 U.S. 128, 133, 100 L. Ed. 2d 115, 122-23, 108 S. Ct. 1677, 1681.) In the present case, paragraph 9 specifically alleges that the Village failed to pay for roll call with knowledge that the practice violated the Act. We find that that allegation was enough to satisfy Illinois pleading standards and to state a cause of action under the Fair Labor Standards Act. Here, the Village's knowledge of the Act and its refusal to pay in the face

of such knowledge were the only additional facts that the plaintiffs were required to allege to state a cause of action for a wilful violation of the Act. Accordingly, we find that the trial court erred in dismissing paragraph 9 of count III of the plaintiffs' complaint.

For the foregoing reasons, we affirm the trial court's judgment dismissing count II of the plaintiffs' complaint with respect to the union plaintiffs; however, we reverse the court's judgment dismissing count II of the plaintiffs' complaint with respect to the nonunion employees. We further reverse the trial court's judgment dismissing paragraph 9 of count III of the plaintiffs' complaint. We remand the cause for further proceedings consistent with the views expressed in this opinion.

The judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

INGLIS and COLWELL, JJ., concur.